IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

MARK BASKA,

        Plaintiff,

Vs.

                                            No. 12-2145-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action to review the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant Mark Baska's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). With the administrative record (Dk. 7) and the parties' briefs on file pursuant to D. Kan. Rule 83.7.1 (Dks. 8, 13, and 14), the case is ripe for review and decision.

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*,

402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "meticulously examine the record as a whole, including anything that may

undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant is to show his impairment is equivalent in severity to a listed impairment. *Lax*,

489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id*. Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The evaluation at steps four and five makes use of the agency's RFC assessment. *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

**PROCEDURAL HISTORY**

Following a hearing at which Mark Baska was represented by counsel, the administrative law judge ("ALJ") issued her decision on October 19, 2010. (R. 9-18). Baska alleged a disability that began September 8, 2008, and the ALJ determined that Baska's insured status continued through December 31, 2014. (R. 9).

At step one, the ALJ found that Baska had not engaged in substantial gainful activity since September 8, 2008. (R. 11). She observed

specifically that Baska had worked periodically from October of 2008 through March of 2009 in order to maintain insurance, but because this work did not last longer than six months, it is regarded as an unsuccessful work attempt. *Id.* The ALJ further offered that the record showed Baska to suffer also from "stress-induced anxiety due to his illness and finances," "difficulty [with] sleeping," and stress-induced breakdowns. *Id.* The ALJ, however, pointed out that Baska testified he was not taking any anxiety medication and had not received any referral for mental health therapy. From her "review of the entire record," the ALJ found "that the claimant's medically determinable mental impairment of anxiety does not cause more than minimal limitation in his ability to perform basic mental work activities and is, therefore, non-severe." *Id.*

The ALJ found at step three that Baska's impairments did not meet or equal a listed impairment. (R. 13). At step four, the ALJ determined that Baska had the RFC to perform light work with an allowance for alternating "between sitting and standing at the work station approximately every thirty minutes" and with a restriction to "avoid work in hazardous environments." (R. 13). The ALJ found that Baska was unable to do his past work. At step five, the ALJ considered Baska's age, education, work experience and RFC to determine that Baska could do other work in the national economy. The ALJ concluded Baska was not disabled from September 8, 2008, through the date of October

5

19, 2010, and denied his claim for DIB. (R. 17-18).

**ISSUES**

Baska argues first, that the ALJ improperly discounted his credibility by relying on factors that do not provide substantial evidence and second, that the ALJ erred in not including mental limitations in the RFC analysis.

**CREDIBILITY DETERMINATION**

This court recognizes that credibility determinations peculiarly fall within the province of the fact finder, and these determinations are not to be upset when supported by substantial evidence. At the same time, courts should expect credibility findings to be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). It is not within the ALJ's discretion simply to ignore evidence favorable to the plaintiff. *Owen v. Chater*, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

The analysis of pain evidence does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence she relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in *Kepler*. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2002); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Resort to standard boilerplate language without

supporting citations of specific evidence will not suffice for credibility findings. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). It is sufficient when the ALJ's credibility determination is more than boilerplate and is linked to specific findings of fact fairly derived from the record. *White*, 287 F.3d at 909–910.

The court only reviews the sufficiency of the evidence. Although a different finding may be sustained by the evidence, the court may not supplant "the agency's choice between two fairly conflicting views" even if the court may have chosen differently in the first instance. *Oldham v. Astrue*, 509 F.3d 1254, 1257–1258 (10th Cir.2007). A claimant's statements regarding pain are necessarily subjective and "can be evaluated only on the basis of credibility." *Thompson v. Sullivan*, 987 F.2d at 1488–89. The credibility determination of claimant's subjective complaints should include considering an "individual's daily activities;" the "location, duration, frequency, and intensity of the individual's pain;" the "dosage and effectiveness of medications taken to alleviate pain;" "the type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate pain or other symptoms;" and "[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004).

In making the RFC determination here, the ALJ acknowledged that

the claimant's symptoms are first evaluated by "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (R. 13). And then, "the intensity, persistence, or functionally limiting effects of the claimant's symptoms" on functioning are evaluated. *Id.* When statements about pain or symptoms "are not substantiated by objective medical evidence," the credibility of these statements are judged "based on a consideration of the entire record." (R. 13).

Though she accepted that Baska's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," the ALJ concluded that "his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's RFC finding of light work. (R. 14). The ALJ found:

> The claimant has a rather consistent and impressive work history that bolsters his credibility, but the medical record and his activities of daily living are inconsistent with his allegation of disability. According to his functional reports, he can provide for his own personal care, prepare meals, take care of his dogs, shop for groceries, drive a car, watch television, and perform household chores including making the bed, washing the dishes, doing the laundry, taking out the trash, and mowing the lawn on a riding lawn mower (Exhibits 4E, 7E, and 8e). Similarly, he testified at the hearing, that he spends his days performing housework, attending physical therapy, watching television, reading the newspaper, and listening to the radio. The claimant's ability to perform a wide range of activities of daily leaving leads me to find that his allegedly disabling impairments are not as significant as alleged.
> The claimant's treatment has been relatively conservative and infrequent. After he was first diagnosed with chronic lymphocytic leukemia in September 2008, his treating physician recommended a

8

> wait-and-see approach with initiation of chemotherapy only if his leukemia showed signs of progression. He did not begin chemotherapy until June 2009 and, although he had significant problems with nausea, vomiting, and fatigue while he underwent chemotherapy, the treatment only lasted about six months. Further, he received no treatment for his degenerative disc disease of the lumbar spine until February 2010. Additionally, he has received no mental health therapy or treatment for his allegedly significant anxiety. The claimant's rather conservative treatment would seem to indicate that his impairments are not as significant as alleged.

(R. 15-16). Baska argues that the ALJ "did not address the reality of . . . [his] day-to-day function," did not correctly recite his reported activities as things he "tried" to do, and did not recognize his stated need to rest during the activities. (Dk. 8, p. 12). Baska notes that the ALJ did not connect or equate his occasional daily living activities to the ability to engage in full-time work, (Dk. 14, p. 2). Baska concludes there is not substantial evidence to sustain the ALJ's credibility finding because she did not accurately characterize and summarize his reported daily activities and testimony on the same.

On Exhibit 4E, Baska's function report dated Jul 10, 2009, he writes, "I try to do what I can around the house: make the bed, dishes, do a little laundry, help cook a little, take out the trash, feed the dogs, maybe mow a little on the rider in the morning or evening," and "I might spend a couple 2 or 3 hours a day. I try to piddle like the old timers used to. Do a little something, rest. Do a little and rest some more." (R. 219). On Exhibit 7E, Baska's function report dated December 4, 2009, he again writes: "The things I try to do daily are: make the bed, do the dishes, feed and water the

9

dogs, take out the trash if needed, maybe do some laundry," and "I try to do these things daily, and I spread them out over the course of the day. I do a little and rest a little, kind of pace myself." (R. 248). On Exhibit 8E, Baska's function report dated February 3, 2010, he writes, "The list of things I try to do every day are: make bed, do dishes, take care of the dogs, do laundry and take out the trash if needed," and "I spread these things out over the course of the day. I do a little and rest, do a little and rest." (R. 259).

It certainly is fair to say that Baska's statements about his daily activities are "much more nuanced than the ALJ's summary suggests." *Wells v. Colvin*, ---F.3d---, 2013 WL 4405723 at *6 (10th Cir. 2013). The ALJ's decision leaves the erroneous impression that Baska daily performs these activities without any regular accommodations for his pain and fatigue through rest and an extended time period for accomplishing the activities. Baska rightly questions how the ALJ's inaccurate characterization of his daily living activities can qualify as specific evidence in support of an adverse credibility finding. "[M]inimal or sporadic performance" of daily living activities can "be an insufficient basis for an adverse credibility finding." *Cobb v. Astrue*, 364 Fed. Appx. 445, 450 (10th Cir.2010) (citations omitted); *see Guerra v. Asture*, 918 F. Supp. 2d 1180, 1187 (D. Kan. 2013). As far as Baska's testimony on his disabling symptoms, the ALJ summarized it in these terms:

> He also testified that he cannot currently work due to his decreased strength, fatigue, forgetfulness, back pain, hip pain and problems sitting

10

> or standing for extended periods of time. In terms of treatment, he testified that he attends physical therapy three times per week for his back pain, but that no medical professional has ever recommended surgery. . . . With regard to his residual functional capacity, he testified that he can sit for fifteen to twenty minutes at a time before he gets fidgety and that he can stand for thirty to ninety minutes at a time. He testified that he needs to lie down two to three times per day for between five minutes and four hours each time.

(R. 13-14). It is not apparent how these complaints of symptoms are inconsistent with Baska's attempts at daily living activities spaced out over a day and interrupted with needed rest periods. The court also does not understand the ALJ's statement that, "[t]he claimant's ability to perform a wide range of activities of daily living leads me to find that his allegedly disabling impairments are not as significant as alleged." (R. 16). This statement certainly depends upon there being evidence that Baska has the "ability to perform" these activities without accommodations that are necessary and consistent with his complaints of disabling impairments. There is no such specific evidence of record cited to support that finding.

Baska also challenges the ALJ's second credibility finding that his treatment has been "relatively conservative and infrequent" and this "would seem to indicate that his impairments are not as significant as alleged." (R. 16). Specific to his degenerative disc disease, the ALJ only noted, "he received no treatment for his degenerative disc disease of the lumbar spine until February 2010." (R. 16). From this alone, the ALJ concludes that Baska's back impairment is "not as significant as alleged." (R. 16). The four-part *Frey* test

11

"is not required in a situation . . ., when the treatment has not been prescribed and the ALJ is simply considering 'what attempts plaintiff made to relieve . . . pain . . . in an effort to evaluate the veracity of plaintiff's contention that . . . pain was so severe as to be disabling." *Billups v. Barnhart*, 322 F. Supp. 2d 1220, 1226 (D. Kan. 2004) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "Minimal or conservative medical treatment may evince a pain that is not disabling." *Dellinger v. Barnhart*, 298 F. Supp. 2d 1130, 1137 (D. Kan. 2003) (citation omitted).

When placed within its proper context and background, the ALJ's cited evidence of "no treatment" before February of 2010 is less than substantial. The ALJ relies on Baska's visit to Dr. Jackson in February of 2010. The records from that visit include that Baska described "a long history of low back pain which has evolved into what he describes as right hip pain." (R. 606). "He has been treated with chiropractic care, medications, electrical stimulation, exercises." (R. 606). Thus, Baska has pursued and received treatment for his back pain and evolving hip pain prior to February of 2010. As to why Baska had not sought more treatment of his back problems prior to this time, the record from the visit includes this:

> Mr. Baska has been through recent treatment for what sounds like chronic lymphocytic leukemia. He has not been eager to treat his back aggressively due to the importance of treating the leukemia. At this point, his last regimen of chemo has been completed and he would like again to take a look at his back. . . .

12

(R. 606). Similarly, the oncology report from Dr. Raonak Ekram at Lawrence Memorial Hospital after a visit on March 3, 2010, states as part of Baska's past medical history:

> 1. Chronic back pain. He had had an MRI scan of the lumbar spine on September 11, 2008, which revealed moderate disk extrusion at L4-L5 level with some mass effect at the right lateral recess and mild to moderate central canal stenosis. Orthopedic consultation was considered; however, the patient's disease had worsened in the meantime.

(R. 652). While the evidence of record is that Baska delayed aggressive medical treatment of his back problems due to his more pressing and worsening problems with leukemia, the ALJ makes no mention of this evidence that gives context and explanation to Baska's delayed treatment. Instead, the ALJ simply ignores it and draws an adverse inference as if this evidence did not exist. This does undermine the ALJ's credibility finding. The court cannot say that the ALJ's credibility finding is "closely and affirmatively linked to substantial evidence and [is] not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391.

**MENTAL LIMITATION IN RFC DETERMINATION**

Baska contends that the ALJ included no mental limitations at the step four RFC analysis, that the evidence of record establishes limitations, and that the failure to include these limitations is reversible error. The Commissioner agrees the ALJ did not include any mental limitations in the RFC determination. Arguing that any such mental limitations were related to

13

Baska's chemotherapy which did not last for 12 months, the Commissioner contends the ALJ properly excluded any mental limitation from steps four and five.

At step two, the ALJ found that Baska had "stress-induced anxiety due to his illness and finances," and noted:

> At the hearing, he testified that he has difficulty sleeping and that he "breaks down" sometimes due to stress. He also testified that he is not taking any medication for his anxiety and that he has not been referred for mental health therapy. After a review of the entire record, I find that the claimant's medically determinable mental impairment of anxiety does not cause more than minimal limitation in his ability to perform basic mental work activities and is, therefore, non-severe.

(R. 11).1 In the three functional areas, the ALJ found "no more than" mild limitations or difficulties. (R. 12). The ALJ observed that her analysis at steps two and three is not an RFC assessment and that "[t]he mental residual functional capacity assessment used at steps 4 and 5 . . . requires a more detailed assessment . . . ." (R. 12). The ALJ concludes her step two findings with, "[t]herefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis." (R. 12-13). Nonetheless, as both sides here agree, the ALJ did not include any mental limitation in the RFC. This problem is the same as

---

1 At step four, the ALJ acknowledges that Baska has been prescribed Alprazolam for stress and anxiety. (R. 14). Baska also testified that he was this taking this prescription medicine for stress. (R. 63). ALJ does not cite any evidence to support the finding here that Baska is not taking medication for his anxiety.

that summarized by the Tenth Circuit in *Farrill v. Asture*, 486 Fed. Appx. 711, 713, 2012 WL 2443711 at *2 (10th Cir. 2012), "[b]ut the RFC did not include any mental limitations, and the ALJ never explained why he chose not to include any mental limitations in the RFC, despite his previous assessment of mild limitations."

At step two, there is no question that the ALJ found that Baska's stress-induced anxiety was a non-severe impairment. "Non-severe but medically determinable mental impairments must be taken into account when establishing a claimant's RFC." *Dorman v. Astrue*, 435 Fed. Appx. 792, 795, 2011 WL 3583169 at *2 (10th Cir. 2011) (citing 20 C.F.R. § 404.1545(a)(2)). Nor may this court conclude "that the ALJ need not consider as part of his RFC mental limitations that do not 'significantly affect' the claimant's ability to engage in work-related activities." *Id*. As far as mental limitations discussed at step four, the ALJ here only generally discussed them when assessing Baska's credibility as part of the RFC determination:

> He stated that he takes medication including . . . Alprazolam for his stress and anxiety. Despite being prescribed Alprazolam, he testified that he has never been referred to a mental health professional.
> . . . .
> On June 11, 2010, the claimant's treating physician, Raonak Ekram, M.D., drafted a letter concerning the claimant's functional limitations . . . . Specifically, Dr. Ekram noted that the claimant has had some problems with cognitive dysfunction, short-term memory, and fatigue since he completed his chemotherapy. . . .
> . . . Additionally, he has received no mental health therapy or treatment for his allegedly significant anxiety. The claimant's rather conservative treatment would seem to indicate that his impairments are not as

15

significant as alleged.

(R. 14-16). This discussion does not satisfy "the ALJ's obligation at step four to provide a more detailed assessment of . . . [claimant's] ability to complete various job functions as part of determining . . . RFC." *Wells v. Colvin*, ---F.3d---, 2013 WL 4405723 at *5 (10th Cir. 2013). Discounting the severity of mental health limitations due to the lack of a referral is not a substitute for mental RFC analysis at steps four and five. The court therefore must remand for further proceedings concerning the effect of Baska's medically determinable mental impairments on his RFC and for additional analysis at steps four and five, including a hearing if deemed necessary. *See Wells*, 2013 WL 4405723 at *7.

The Commissioner argues there is "no evidence to support a finding that the effects of Plaintiff's anxiety were expected to meet the Commissioner's requirements to persist for at least 12 months." (Dk. 13 , p. 10). Citing Dr. Eckram's report of December 24, 2009, that chemotherapy had been completed and that Baska was doing well, the Commissioner contends this shows Baska's "mental functioning improved with the conclusion of chemotherapy" and all this happened "within 12 months of onset." *Id.* at 13. There is a serious problem with this argument made by the Commissioner. The ALJ did not make any such finding in her decision, and the circumstances here do not justify risking a violation of "the general rule against post hoc

justification of administrative action." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (citations omitted). This is not a "factual matter that could not have been resolved in any other way, and this is not a situation where the Commissioner simply supplied a missing dispositive finding." *Hackett v. Barnhart*, 475 F.3d 1166, 1175 (10th Cir. 2007) (internal quotation marks and citation omitted). Indeed, the ALJ credited Dr. Ekram's letter of June 11, 2010, as a treating physician's opinion on functional limitations. (R. 15). In that letter, Dr. Ekram writes: "He is still under close surveillance and since the completion of chemotherapy has had multiple symptoms that may be due to systemic chemotherapy. This includes cognitive dysfunction, difficulty with short term memory, and persistent fatigue." (R. 635). The record certainly contains evidence that the plaintiff's mental limitations would last longer than 12 months.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 28th day of August, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge